IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MICHAEL J. PALADINO, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL NO. 3:09CV728 |
| ATLAS VAN LINES, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Defendant's motion for summary judgment (Docket No. 7). For the reasons set forth herein, the Defendant's motion is GRANTED.

### I. Background

This action arose from an agreement between Plaintiff Michael Paladino ("Paladino") and Defendant Atlas Van Lines, Inc. ("Atlas") whereby Paladino hired Atlas to transport his household goods from Nashville, Tennessee to Richmond, Virginia. (McCandles Aff. ¶ 4.) Plaintiff seeks to recover for damage to his household goods allegedly caused by Atlas during the transport of said household goods. (Pl.'s Warrant in Debt.) Atlas seeks summary judgment on the ground that Paladino's action was not timely filed.

On August 4, 2005, the date of the pick-up in Tennessee, Atlas issued a Household Goods Bill of Lading and Freight Bill No HI577160, which Paladino signed. (McCandles Aff. ¶¶ 6-7, Exhibit B.) The Bill of Lading advised that Paladino was required to file a written claim

with Atlas within nine months of delivery for any loss, damage, injury, or delay, and that any lawsuit must thereafter be filed in court no later than two years from the date on which Atlas gives written notice that it has denied the claim. (Id. at Exhibits B, C.)

Atlas delivered Paladino's household goods on September 10, 2005. (Id. at ¶ 13.) On January 10, 2006, Atlas received a Presentation of Loss and Damage Claim from Paladino, asserting damage to his furniture and household goods. (Id. at ¶ 14, Exhibit D.) Atlas initially rejected Paladino's claim by letter, stating that the information provided by Paladino in the claim was insufficient to satisfy the minimum filing requirements. (Id. at ¶ 15, Exhibit E.) Paladino submitted a revised claim on February 12, 2006. (Id. at ¶ 16, Exhibit F.)

On April 17, 2006, Paladino sent Atlas a letter inquiring about the status of his claim. (Id. at ¶ 17, Exhibit G.) Atlas responded with a letter dated April 18, 2006. (Id. at Exhibit H.) In the letter Atlas presented Paladino with a "settlement resolution" and a release to conclude his claim. (Id.) Attached to the letter was an itemized list describing the damaged items for which Atlas would pay, the amount to be paid, the items for which Atlas denied liability, and the reason for each denial. (Id.) The letter included additional details on Atlas's reasoning for denying liability for certain items, including the soundboard on Paladino's piano, a dresser, and a coffee table. (Id.) With regard to the piano, Atlas stated, "If you have any further information that we may have overlooked or not considered, you may forward it for review." (Id.) The letter concluded with, "If we have overlooked any fact of your claim, we will be happy to review that accordingly," and "Please complete, and sign the release as indicated, and return it for issuance of your check to bring this matter to a conclusion." (Id.)

Paladino retained counsel, and on May 19, 2006, counsel wrote to Atlas requesting

further discussion regarding Paladino's claims. (Id. at ¶ 19, Exhibit I.) Atlas responded on June 6, 2006, further explaining its settlement offer and reiterating that it would close the claim upon receipt of a claim release signed by Paladino. (Id. at Exhibit J.) Atlas also repeated that it would review any additional information that Paladino may wish to submit in support of his claim, and that Atlas would amend its settlement offer accordingly. (Id.)

Multiple communications were sent between Paladino's attorney and Atlas between May and October of 2006. (Id. at ¶¶ 19-23, Exhibits I, J, K, L, M.) The primary issue in dispute in these letters was the soundboard for Paladino's piano, which Paladino asserted was damaged when Atlas employees dropped the piano, and which Atlas asserted was damaged as a result of atmospheric conditions for which Atlas was not responsible. (Id.) In a July 21, 2006 letter, Atlas stated, "Atlas is happy to entertain any claim that can be documented to be shown to be transit related. Without such documentation, Atlas would continue to deny any such liability on this or any other item." (Id. at Exhibit L.)

On October 21, 2006, Atlas sent Paladino a revised settlement offer in which it denied an additional three items (namely, a dining room chair, crate beveled glass for a dining room table, and crate beveled glass for a hutch), and increased its allowance for a repair to the foot pedal of the piano. (Id. at ¶ 23, Exhibit M.) Atlas attached a new claim release to its letter. (Id.) The letter and the release clearly stated that the settlement offer would expire in thirty days. (Id.)

Neither party has supplied the Court with evidence of any communications between Atlas and Paladino or his attorney dated after October 21, 2006, aside from a September 14, 2009 letter sent by Paladino's counsel to Atlas offering to settle the dispute for $12,000.00. Paladino instituted this action in State Court on October 26, 2009.

3

## II. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Id. at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48 (emphasis in original). Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. Lewis v.

City of Va. Beach Sheriff's Office, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

Furthermore, a "material fact" is a fact that might affect the outcome of a party's case. Anderson, 477 U.S. at 247-48; JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, when viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. Anderson, 477 U.S. at 248.

### III. Discussion

Because Paladino's claims arise from the interstate shipment of goods by a "carrier,"[1] they are governed by the Carmack Amendment, 49 U.S.C. § 13101 et seq. The Carmack Amendment was "enacted in 1906 to supersede diverse state laws governing the shipment of goods and replace them with a uniform policy governing interstate carriers' liability for property loss." Dominion Res. Servs., Inc. v. 5K Logistics, Inc., No. 3:09cv315, 2010 WL 679845 at *3 (E.D. Va. Feb. 23, 2010) (Spencer, C.J.). The Carmack Amendment requires carriers that transport goods in interstate commerce to issue a bill of lading to the shipper and makes the

---

[1] Atlas is a "household goods motor carrier" within the meaning of the Carmack Amendment. See 49 U.S.C. § 13102(12).

carrier liable under the terms of that bill of lading for damage to the property that occurs in transit. See 49 U.S.C. § 14706(a)(1). The provisions of the Carmack Amendment that are pertinent to Atlas's defense are as follows:

> (e) Minimum period for filing claims.--
>
> (1) In general.--A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

49 U.S.C. § 14706(e)(1). Failure to properly preserve a right of action by complying with these time limits warrants summary judgment in favor of a carrier. Dominion Res. Servs., Inc., 2010 WL 679845 at *3.

Atlas's Bill of Lading, which was signed by Paladino, complied with the requirements of 49 U.S.C. § 14706(e)(1) inasmuch as it provided for a period of not less than two years in which to file a civil action. (See McCandles Aff. Exhibits B, C.) Therefore, the two-year statute of limitations stated therein is the applicable statute of limitations for Paladino's claim. Paladino does not dispute that he was required to file his action within two years of the date on which Atlas provided written notice of disallowance.

The primary dispute between the parties with regard to Atlas's motion is whether Atlas provided Paladino written notice of disallowance of his claim. Atlas contends that it provided written notice of disallowance on April 18, 2006, and again on October 21, 2006. (Def.'s Mem. Supp. Mot. 8-12.) Paladino asserts that Atlas never gave a clear, final, and unequivocal disallowance of Paladino's claim. (Pl.'s Response 5-8.) Specifically, Paladino contends that the correspondence between Paladino and Atlas demonstrated ongoing settlement negotiations. (Id.

6

at 2, 5-8.)

In order to constitute a notice of disallowance within the meaning of the Carmack Amendment and, thereby, commence the running of the two year limitations period, a notice of the carrier's rejection of a claim must be "unequivocal." Dominion Res. Servs., Inc., 2010 WL 679845 at *3. The word "disallow" need not be used in the notice, provided the notice sufficiently conveys that the claim will not be honored in whole or in part. Polaroid Corp. v. Hermann Forwarding Co., 541 F.2d 1007, 1011 (3d Cir. 1976).

A request for more information is not a notice of disallowance. Combustion Engineering, 741 F.2d 533, 536 (2d Cir. 1984). For example, in Combustion Engineering the court found that a letter denying a claim "as presented" did not constitute sufficient notice of disallowance where it stated that the carrier did not have sufficient documentation with which to process the shipper's claim and requested an itemized bill from the shipper, together with supporting documentation. Id. However, once a carrier provides an unequivocal notice that it will not honor the shipper's claim, subsequent negotiations between the carrier and the shipper do not toll the limitations period because, as other courts have observed, "the purpose for a formal denial of claim is to start the statute of limitations machinery . . . rather than the discouragement of meaningful negotiations between the parties." White v. United Van Lines, Inc., 758 F. Supp. 1240, 1243 (N.D. Ill. 1991) (citing B.F. Goodrich Tire Co. v. Louisville & Nashville R.R. Co., 439 F. Supp. 363, 365 (S.D.N.Y. 1977)).

It is arguable that the letter dated April 18, 2006 was insufficient to commence the statute of limitations because said letter invited Paladino to provide further information for review. (McCandles Aff., Exhibit H.) Like the letter in Combustion Engineering, the April 18, 2006

letter could be said to be a denial "as presented." Combustion Engineering, 741 F.2d at 536. However, the Court need not reach this conclusion because the October 21, 2006 letter and the release attached thereto constituted an unequivocal and final disallowance of Paladino's claim. Unlike Atlas's prior letters, the October 21, 2006 letter did not invite Paladino to submit additional evidence in support of his claim. (McCandles Aff., Exhibit M.) Rather, it provided a detailed breakdown of the settlement offer and clearly indicated that the offer would expire if the release was not signed and returned to Atlas within thirty days. (Id.) Moreover, aside from the September 14, 2009 settlement offer from Paladino's counsel (which does not constitute a disallowance by Atlas), the parties have not presented any further communications regarding Paladino's claim subsequent to the October 21, 2006 letter, which supports a finding that the parties understood that the October 21, 2006 letter was final and unequivocal. Inasmuch as Paladino did not file this lawsuit until October 26, 2009, which was more than two years after the October 21, 2006 letter, the limitations period has run.

Paladino further argues that Atlas should be estopped from asserting a contractual limitation defense because Atlas made representations to Paladino that misled Paladino into believing his claim was viable and subject to further consideration and negotiation. (Pl.'s Response 8-9.) Specifically, Paladino asserts that Atlas's representations regarding its ongoing review and consideration of his claim misled him into believing that it was not necessary for him to file a lawsuit. (Id.)

Equitable estoppel is a well established doctrine in the Fourth Circuit. It is "invoked by courts to aid a party who, in good faith, has relied, to his detriment, upon the representations of another." United States v. Fid. & Cas. Co. of N.Y., 402 F.2d 893, 897 (4th Cir. 1968). To

establish estoppel, it is not necessary that fraud be shown; rather, it is only necessary to show that the person estopped, by his statements or actions, misled another to his prejudice. Id. at 898. In the context of the Carmack Amendment, courts have stated that estoppel "cannot be invoked absent evidence that the carrier told the shipper not to file or otherwise led it to believe that filing was unnecessary to have its claim satisfied." Imperial News Co. v. P-I-E Nationwide, Inc., 905 F.2d 641, 645 (2d Cir. 1990). Estoppel is not to be found lightly. Id.

Even if Atlas's statements made between April 2006 and October 2006 regarding its willingness to consider new evidence as may have been supplied by Paladino could be construed as misleading, Atlas made no such statements in its October 21, 2006 letter, nor did it make any thereafter as far as the Court is aware. (McCandles Aff., Exhibit M.) As the Court has previously found, the October 21, 2006 letter constituted an unequivocal and final disallowance of Paladino's claim. Atlas never told Paladino not to file a law suit in court, and nothing contained in the October 21, 2006 letter could mislead an individual into believing that filing a lawsuit was unnecessary. (Id.) Therefore, Atlas is not estopped from asserting a contractual limitations defense, and Paladino's claim is time barred.

## IV. Conclusion

For the reasons discussed herein, Defendant's motion for summary judgment (Docket No. 7) is GRANTED in its entirety.

An appropriate Order shall issue.

/s/
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: May 4, 2010

9